## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| W. R. BERKLEY CORPORATION, a Delaware corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | C.A. No. |
| CHRISTOPHER NOLAN, | ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff W. R. Berkley Corporation ("Plaintiff" or "W. R. Berkley"), by and through its undersigned counsel, brings this Complaint seeking to enforce its recapture remedies under certain Restricted Stock Unit agreements against Defendant Christopher Nolan ("Defendant" or "Nolan"). In support of its claim, W. R. Berkley alleges as follows:

### Jurisdiction/Venue

1.      This Court has diversity jurisdiction over this matter because the parties are citizens of different states and the amount in controversy exceeds $75,000.00.  28 U.S.C. § 1332(a).

2.      Venue is appropriate in this District because Plaintiff is a citizen of the state of Delaware.  Venue is further appropriate in this District

because the parties contractually agreed that venue in Delaware was the exclusive venue with respect to the claims at issue.

## Background

### I.     The Restricted Stock Agreements

3.     Defendant was previously employed by Berkley Surety Group, an operating unit of W. R. Berkley's subsidiary Berkley Insurance Company.  Defendant's position was Chief Risk Officer & Executive Vice President – Head of Commercial.[1]

4.     To incentivize certain, selected management-level employees and align their interests with those of W. R. Berkley as the ultimate parent corporation, W. R. Berkley offers restricted stock units to them.

5.     On or about July 19, 2010, Defendant entered into a Restricted Stock Unit Agreement ("First RSU Agreement") with W. R. Berkley. In the First RSU Agreement, W. R. Berkley granted Nolan restricted stock units pursuant to W. R. Berkley's Stock Incentive Plan.  Under the terms of the First RSU Agreement, the stock units eventually vested, prior to the

---

[1] For ease of reference, the Complaint will refer to Defendant's employment "with W. R. Berkley."  However, as noted, Defendant's employment is actually with Berkley Surety, an operating unit of a subsidiary of W. R. Berkley.

termination of Nolan's employment with W. R. Berkley, and the shares were provided to Nolan.

6. As the result of 3-for-2 stock splits in April 2019 and 2022, Nolan ultimately received the equivalent of 2,250 restricted stock units under the First RSU Agreement.

7. On or about August 7, 2012, Defendant entered into a Restricted Stock Unit Agreement ("Second RSU Agreement") with W. R. Berkley. In the Second RSU Agreement, W. R. Berkley granted Nolan restricted stock units pursuant to W. R. Berkley's Stock Incentive Plan. Under the terms of the Second RSU Agreement, the stock units eventually vested, prior to the termination of Nolan's employment with W. R. Berkley, and the shares were provided to Nolan.

8. As the result of 3-for-2 stock splits in April 2019 and 2022, Nolan ultimately received the equivalent of 1,687 restricted stock units under the Second RSU Agreement.

9. On or about August 5, 2014, Defendant entered into a Restricted Stock Unit Agreement ("Third RSU Agreement") with W. R. Berkley. In the Third RSU Agreement, W. R. Berkley granted Nolan restricted stock units pursuant to W. R. Berkley's Stock Incentive Plan.

3

Under the terms of the Third RSU Agreement, the stock units eventually vested, prior to the termination of Nolan's employment with W. R. Berkley, and the shares were provided to Nolan.

10.     As a result of 3-for-2 stock splits in April 2019 and 2022, Nolan ultimately received the equivalent of 1,125 restricted stock units under the Third RSU Agreement.

11.     On or about August 5, 2015, Defendant entered into a Restricted Stock Unit Agreement ("Fourth RSU Agreement") with W. R. Berkley. In the Fourth RSU Agreement, W. R. Berkley granted Nolan restricted stock units pursuant to W. R. Berkley's Stock Incentive Plan. Under the terms of the Fourth RSU Agreement, the stock units eventually vested, prior to the termination of Nolan's employment with W. R. Berkley, and the shares were provided to Nolan.

12.     As a result of 3-for-2 stock splits in April 2019 and 2022, Nolan ultimately received the equivalent of 1,003 restricted stock units under the Fourth RSU Agreement.

13.     On or about August 5, 2016, Defendant entered into a Restricted Stock Unit Agreement ("Fifth RSU Agreement") with W. R. Berkley. In the Fifth RSU Agreement, W. R. Berkley granted Nolan

4

restricted stock units pursuant to W. R. Berkley's Stock Incentive Plan.
Under the terms of the Fifth RSU Agreement, the stock units eventually
vested, prior to the termination of Nolan's employment with W. R. Berkley,
and the shares were provided to Nolan.

14.     As a result of 3-for-2 stock splits in April 2019 and 2022, Nolan
ultimately received the equivalent of 1,057 restricted stock units under the
Fifth RSU Agreement.

15.     On or about August 15, 2017, Defendant entered into a
Restricted Stock Unit Agreement ("Sixth RSU Agreement") with W. R.
Berkley. See Exhibit 1. In the Sixth RSU Agreement, W. R. Berkley granted
Nolan restricted stock units pursuant to W. R. Berkley's Stock Incentive
Plan. Under the terms of the Sixth RSU Agreement, a portion of the stock
units eventually vested, prior to the termination of Nolan's employment with
W. R. Berkley, and the shares were provided to Nolan.

16.     As a result of 3-for-2 stock splits in April 2019 and 2022, Nolan
ultimately received the equivalent of 655 restricted stock units under the
Sixth RSU Agreement.

17.     On or about August 15, 2018, Defendant entered into a
Restricted Stock Unit Agreement ("Seventh RSU Agreement") with W. R.

5

Berkley. See Exhibit 2. In the Seventh RSU Agreement, W. R. Berkley granted Nolan restricted stock units pursuant to W. R. Berkley's Stock Incentive Plan. Under the terms of the Seventh RSU Agreement, a portion of the stock units vested, prior to the termination of Nolan's employment with W. R. Berkley, and the shares were provided to Nolan.

18.    As a result of 3-for-2 stock splits in April 2019 and 2022, Nolan ultimately received the equivalent of 343 restricted stock units under the Seventh RSU Agreement.

19.    In total, the following shares in W. R. Berkley vested under the aforementioned RSU Agreements and were delivered to Nolan, adjusted for the 3-for-2 stock splits in April 2019 and 2022, as follows:

| Grant Date | Vest/Settlement Date | # Shares | Value[2] |
|------------|---------------------|----------|----------|
| 7/19/2010  | 7/19/2015           | 2,250    | $55,755.00 |
| 8/07/2012  | 8/07/2017           | 1,687    | $51,335.41 |
| 8/05/2014  | 8/05/2017           | 374      | $11,380.82 |
|            | 8/05/2018           | 375      | $12,675.00 |
|            | 8/05/2019           | 376      | $17,186.96 |
| 8/5/2015   | 8/05/2018           | 333      | $11,255.40 |
|            | 8/05/2019           | 335      | $15,312.85 |
|            | 8/05/2020           | 335      | $13,862.30 |
| 8/5/2016   | 8/05/2019           | 353      | $16,135.63 |

---

[2] The value is determined as of the vesting/settlement date as provided in the RSU Agreements, adjusted for 3-for-2 stock splits in April 2019 and 2022. If the value was determined based on current stock price, the total value would be $561,173.20 (based on a closing price on November 15, 2022 of $69.11 per share).

|           | 8/05/2020 |       | 353   | $14,607.14   |
|           | 8/05/2021 |       | 351   | $16,900.65   |
| 8/15/2017 | 8/15/2020 |       | 327   | $13,354.68   |
|           | 8/15/2021 |       | 328   | $16,255.68   |
| 8/15/2018 | 8/15/2021 |       | 343   | $16,999.08   |
|           |           | TOTAL | 8,120 | $283,016.60  |

20.     The Sixth RSU Agreement modified and otherwise amended
certain provisions of the First, Second Third, Fourth, and Fifth RSU
Agreements, including provisions relating to activities that could result in
the Defendant being required to repay the value, on the vesting settlement
dates, of the shares delivered to Nolan pursuant to the Restricted Stock
United Agreements. Collectively, the First, Second, Third, Fourth, Fifth,
Sixth, and Seventh RSU Agreements are hereinafter referred to as the "RSU
Agreements."

21.     In addition to the aforementioned RSU Agreements, Defendant
also entered into additional RSU Agreements with W. R. Berkley on August
15, 2019, August 15, 2020, and August 15, 2021, but none of the shares
granted to him under those later RSU Agreements have vested or will vest.

22.     Each of the RSU Agreements was a discretionary financial
benefit given to Nolan by W. R. Berkley.

7

23.     W. R. Berkley itself was not Nolan's employer but was the ultimate parent company of Nolan's employer.

## II.     The Restrictive Covenants and Repayment Provisions

24.     The RSU Agreements provide that if Nolan has engaged in a "Competitive Action" within the period of one year after the termination of his employment (the "Restricted Period"), W. R. Berkley has the right to demand repayment of (i) an amount equal to the values, as of the "Settlement Date," of the shares delivered to Nolan under each of those RSU Agreements (which also may be satisfied by Nolan returning the actual number of shares of stock), and (ii) the value of any dividends paid on such shares delivered to Nolan.

25.     The RSU Agreements generally provide that Nolan has engaged in a "Competitive Action" if, either directly or indirectly, and whether as an employee, consultant, independent contractor, partner, joint venturer or otherwise, he engages in or directs any business activities, except those that are ministerial or clerical in nature, which are competitive with the business activities of the subsidiaries of W. R. Berkley which employed him, in or directed into any geographical area where he had responsibilities on behalf of such subsidiary or subsidiaries, or where Nolan received

"Confidential Information" and in which such subsidiary or subsidiaries is or are engaged in business at the time of enforcement.

26.     Under the express terms of the RSU Agreements, the Compensation Committee of W. R. Berkley's board of directors (the "Compensation Committee") has sole and absolute discretion to determine whether Nolan engaged in a Competitive Action in breach of the applicable provisions of the RSU Agreements.

27.     Additionally, the express terms of the RSU Agreements require Nolan to "notify the Company within ten (10) days of commencing any employment or other service provider relationship with any company or business during the Restricted Period, specifying in reasonable detail (i) the name of such company or business and the line of business in which it is engaged, and (ii) [Nolan's] position or title and the types of services to be rendered by [Nolan] in such position or title."

28.     The RSU Agreements further provide that "if [Nolan] fails to so notify the Company, [Nolan] shall be required to repay (at the Committee's sole discretion) to the Company the amounts described in Section 3(d) as if the Grantee had engaged in a Competitive Action during the Restricted Period, unless [Nolan] can provide dispositive evidence, which shall be

determined in the Committee's sole discretion, that a Competitive Action did not occur."

29. The Compensation Committee is comprised entirely of independent directors of W. R. Berkley.

30. The RSU Agreements provide that they shall be construed and interpreted in accordance with the laws of the State of Delaware, without regard to the principles of conflicts of law thereof.

## III.   Nolan's Employment with Berkley Surety

31. At the time he terminated his employment with Berkley Surety Group ("Berkley Surety") on December 31, 2021, Nolan was employed as the Chief Risk Officer & Executive Vice President – Head of Commercial.

32. Berkley Surety is an operating unit of a subsidiary of W. R. Berkley, Berkley Insurance Company.

33. After voluntarily terminating his employment with Berkley Surety, and within the Restricted Period, Nolan began working as the Head of Large Contract Surety for Zurich North America ("Zurich").

34. On or about September 13, 2022, the Compensation Committee met and considered the facts and circumstances of Nolan's employment with

Berkley Surety and Zurich, and considered whether he has engaged in a Competitive Action.

35. The Compensation Committee determined that in Nolan's employment with Zurich he is engaging in business activities which are competitive with the business activities of Berkley Surety.

36. The Compensation Committee further determined that Nolan's business activities on behalf of Zurich are taking place in or are directed into a geographical area in which he had responsibilities on behalf of Berkley Surety or in which he learned of or received Confidential Information as defined in section 3(h) of the RSU Agreements, and in which Berkley Surety is presently engaged in business.

37. The Compensation Committee determined that Nolan breached the terms of the RSU Agreements due to Nolan having engaged in Competitive Action in breach of the terms of the RSU Agreements.

38. The Compensation Committee also determined that Nolan has failed to provide, in sufficient reasonable detail, information to W. R. Berkley about his actual employment responsibilities with Zurich as required by Section 3(g) of the RSU Agreements.

39.     The Compensation Committee determined that Nolan breached the terms of the notice requirements of Section 3(g) of the RSU Agreements.

40.     As a result of its determination that Nolan had engaged in a Competitive Action, the Compensation Committee further instructed W. R. Berkley to exercise its recapture rights under the RSU Agreements and authorized officers of W. R. Berkley to do so.

41.     On or about September 15, 2022, following the decisions made by the Compensation Committee, W. R. Berkley demanded that Nolan return to W. R. Berkley the vested restricted stock units together with any dividends or dividend equivalents Nolan had received on such shares, or repay W. R. Berkley the value of the vested restricted stock units and any dividends or dividend equivalents on such shares, if any, that he had received under the RSU Agreements because he had engaged in "Competitive Action" during the "Restricted Period" as those terms are defined in the applicable RSU Agreements.  See Exhibit 3.

42.     The total amount that the Compensation Committee has instructed and authorized W. R. Berkley to recapture from Nolan is $283,016.60, plus the total amount of all dividends paid to Nolan after each

applicable Settlement Date on shares of W. R. Berkley common stock granted to him that have vested under the terms of the RSU Agreements.

43.     Alternatively, the Compensation Committee has authorized W. R. Berkley to accept Nolan's return of the actual shares of stock in W. R. Berkley, together with the value of all dividends or dividend equivalents paid on such shares.

44.     To the extent Nolan has sold or does sell such shares of stock in W. R. Berkley for a price that exceeds the value on the Settlement Date, then consistent with the terms of RSU Agreements, W. R. Berkley does not claim, and this action does not seek, to recover such excess, irrespective of the Compensation Committee's determination that Nolan has breached his obligations under the RSU Agreements.[3]

45.     Nolan has not made any repayment to W. R. Berkley as required by the terms of the RSU Agreements, whether in response to the demand made by W. R. Berkley or otherwise, nor has he returned any of the shares of stock.

---

[3] The value of the shares of stock as of the closing price of $69.11 per share on November 15, 2022 is approximately $561,173.20.

## **Breach of Contract/ Debt**

46.     W. R. Berkley incorporates by references the allegations set forth in paragraphs 1 through 45 as if fully set forth herein.

47.     The RSU Agreements are enforceable contracts.

48.     Pursuant to the RSU Agreements, Nolan owes W. R. Berkley the sum of \$283,016.00 plus the value of the dividends, if any, paid on the common stock of W. R. Berkley that had been received by Nolan under the terms of the RSU Agreements which amount is due and payable, in full.

49.     W. R. Berkley has performed its obligations to Nolan, if any, under the RSU Agreements.

50.     Demand for repayment has been made.

51.     Nolan has not repaid the amount due and owing to W. R. Berkley.

52.     By failing to make such payment and/or to return the shares as aforesaid, Nolan has breached the RSU Agreements.

53.     As a direct and proximate result of Nolan's breach, W. R. Berkley has been damaged.

14

**WHEREFORE**, Plaintiff requests the following relief:

1.      Entry of judgment in its favor and against Defendant for the sum of $283,016.00, plus the value of all dividends, if any, paid on the common stock of W. R. Berkley that had been received by Nolan under the terms of the RSU Agreements, which amount represents the recapture amount due under the RSU Agreements as a result of the Committee's determination that Defendant breached same;

2.      Awarding W. R. Berkley its costs and expenses incurred in the prosecution of this action;

3.      An award of pre- and post-judgment interest; and

4.      Such other relief as the Court deems just and proper.

ROBINSON & COLE LLP

Curtis J. Crowther (No. 3238)
1201 N. Market Street
Wilmington, DE 19801
Telephone:  (302) 516-1700
Facsimile:  (302) 516-1699
Email:  ccrowther@rc.com

and

Trevor L. Bradley (*pro hac vice forthcoming*)
1055 Washington Boulevard
Stamford, CT 06901
tbradley@rc.com

*Attorneys for W. R. Berkley Corporation*

Dated: November 28, 2022